UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WILDEARTH GUARDIANS,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE, ANIMAL, AND PLANT HEALTH INSPECTION SERVICE,<br><br>    Defendant. | Case No. 2:12-cv-00716-MMD-PAL<br><br>ORDER<br><br>(Defendant's 12(b)(1) Motion to Dismiss – dkt. no. 12)<br><br>(Plaintiff's Motion for Leave to Conduct Jurisdictional Discovery – dkt. no. 27) |

**I.    SUMMARY**

Before the Court are Defendant's Motion to Dismiss (dkt. no. 12) and Plaintiff's Motion for Leave to Conduct Jurisdictional Discovery (dkt. no. 27). For the reasons discussed below, the Motion to Dismiss is granted in part and denied in part, and the Motion for Leave to Conduct Jurisdictional Discovery is denied.

**II.    BACKGROUND**

This is an action by WildEarth Guardians ("Guardians") for declaratory and injunctive relief challenging the continuing failure of the Defendant, United States Department of Agriculture, Animal and Plant Health Inspection Service ("USDAAPHIS"), to comply with the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4347, and the Wilderness Act, 16 U.S.C. §§ 1131-1136, in its "Wildlife Services" ("WS") program.

Plaintiff alleges that WS's ongoing wildlife damage management program uses outdated information compiled in its 1994/1997 programmatic environmental impact statement ("1994/1997 PEIS"), resulting in outmoded methods for conducting its wildlife management and incorrect estimates for how to go about conducting its predator damage management program ("PDM").[1]  Plaintiff asserts that Defendant relied on this outdated information in drafting its 2010 predator damage management program in Nevada.

WS prepared and drafted an environmental assessment ("EA") for its ongoing predator damage management program in Nevada in 2010, drafting five alternatives.  In June 2011, WS issued a Finding of No Significant Impact ("FONSI") and Decision for PDM in Nevada.  In its Decision on the Nevada EA, WS chose "alternative 5," which would impose a modified version of its existing Nevada program, with a greater emphasis on sage grouse and big game protection, and less emphasis on livestock protection.  WS concluded that there would not be a significant impact on the quality of the human environment as a result of its implementation of alternative 5, and that, accordingly, an environmental impact statement ("EIS") need not be prepared.  Plaintiff alleges that WS failed to consider new information in drafting the Nevada EA, and relied upon tiered and stale environmental analysis contained in the 1994/1997 PEIS.

Plaintiff asserts that the Nevada EA's decision to implement alternative 5 for its PDM violates NEPA in several ways: (1) failing to adequately consider and analyze the environmental impacts caused by the removal of carnivores and by the kill methods used in Nevada; (2) failing to prepare a full EIS for its Nevada Program; and (3) failing to supplement the 1994/1997 PEIS with more recent information regarding the environmental impact of its wildlife killing activities, and relying upon this stale

---

[1] The Complaint explains that the 1994/1997 PEIS addressed the function, methods of operation, and locations of the Animal Damage Control Program as well as the biological, sociocultural, economic and physical impacts of reasonable alternatives to the program.  (Dkt. no. 1 at ¶ 51.)  In October 1997, APHIS revised and reissued its 1994/1997 PEIS for its Animal Damage Control program.  (*Id.* at ¶ 52.)

information in making its Nevada FONSI and Decision.  Finally, Plaintiff alleges that the EA and Decision violates the Wilderness Act by authorizing the hunting of native carnivores in Nevada Wilderness Areas ("WAs") from aircraft.

Plaintiff filed this lawsuit, seeking (1) a declaration that WS violated and continues to violate NEPA by failing to supplement its 1994/1997 PEIS and by failing to conduct new environmental analysis for its national program; (2) an order vacating WS's 1994/1997 PEIS, any decisions thereunder, and any decisions that rely upon or tier to the PEIS; (3) an order enjoining WS from taking any further action to implement its PDM program anywhere in the United States unless and until Defendant has complied with NEPA by supplementing its 1994/1997 PEIS, or by issuing a new PEIS; (4) a declaration that WS's Nevada EA and FONSI violate NEPA and that WS must prepare an EIS for WS's PDM activities in Nevada; (5) a declaration that WS's PDM services in Nevada violate the Wilderness Act where those activities use motor vehicles, motorized equipment, the landing of aircraft, or other forms of mechanical transport; and (6) an order enjoining WS from taking any further action to implement its PDM plan in Nevada unless and until WS complies with NEPA and the Wilderness Act.  (Dkt. no. 1 at 38-39, ¶¶ A-J.)

### III. MOTION TO DISMISS–NEPA CLAIMS

#### A. 12(b)(1) Legal Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows defendants to seek dismissal of a claim or action for a lack of subject matter jurisdiction.  Dismissal under Rule 12(b)(1) is appropriate if the complaint, considered in its entirety, fails to allege facts on its face that are sufficient to establish subject matter jurisdiction.  *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, 546 F.3d 981, 984–85 (9th Cir. 2008).  Although the defendant is the moving party in a motion to dismiss brought under Rule 12(b)(1), the plaintiff is the party invoking the court's jurisdiction.  As a result, the plaintiff bears the burden of proving that the case is properly in federal court.  *McCauley*

///

*v. Ford Motor Co.*, 264 F.3d 952, 957 (9th Cir. 2001) (*citing McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

Federal courts are courts of limited jurisdiction. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). Thus, federal subject matter jurisdiction must exist at the time an action is commenced. *Mallard Auto. Grp., Ltd. v. United States*, 343 F. Supp. 2d 949, 952 (D. Nev. 2004).

Defendant brings a factual attack on the Complaint. Attacks on jurisdiction pursuant to Rule 12(b)(1) can be either facial, confining the inquiry to the allegations in the complaint, or factual, permitting the court to look beyond the complaint. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Myer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Once a moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction. *Savage*, 343 F.3d at 1040, n.3 (*citing St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)); *see also Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1559 (9th Cir. 1987) (stating that on a 12(b)(1) factual attack, the nonmoving party's burden is that of Rule 56(e)). However, on a factual attack, the court may not "resolve genuinely disputed facts where the question of jurisdiction is dependent on the resolution of factual issues going to the merits." *Kohler v. CJP, Ltd.*, 818 F. Supp. 2d 1169, 1172 (C.D. Cal. 2011) (citations and quotation marks omitted).

4

### B.     First and Second Claims for Relief

Plaintiff cannot demonstrate injury-in-fact to support its first and second claims for relief, which allege violations of several NEPA provisions for failing to supplement the 1994/1997 PEIS.

To establish standing, Plaintiff "has the burden of establishing the three elements of Article III standing: (1) he or she has suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision." *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1225 (9th Cir. 2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

A plaintiff like Guardians with "a procedural right . . . can assert that right without meeting all the normal standards for redressability and immediacy." *Lujan*, 504 U.S. at 573 n.7. "In particular, a procedural-rights plaintiff never has to prove that if [it] had received the procedure the substantive result would have been altered. All that is necessary is to show that the procedural step was connected to the substantive result." *Wildearth Guardians v. Salazar*, 880 F. Supp. 2d 77, 83 (D.D.C. 2012) (citation and quotation marks omitted). "But while the normal standards of redressability and immediacy are relaxed in this context, the requirements of injury in fact and causation are not." *Id.*

Plaintiff plainly cannot establish injury-in-fact for its first two causes of action. To establish injury-in-fact, "the plaintiff must have suffered . . . an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (citations and quotation marks omitted). "The Ninth Circuit has held that procedural injury is sufficient to establish injury in fact for purposes of challenging an agency's failure to prepare an environmental impact statement in violation of NEPA, provided that the injury is alleged by a plaintiff having a sufficient geographical nexus to the site of the challenged project that he may be expected to suffer whatever environmental consequences the project may have."

*Greenpeace USA v. Stone*, 748 F. Supp. 749, 755-56 (D. Haw. 1990) (*citing Friends of the Earth v. U.S. Navy*, 841 F.2d 927, 932 (9th Cir. 1988) (quotation marks and other citations omitted)).

In *Summers*, an environmental organization sought to enjoin the US Forest Service from applying its regulation that exempt small fire-rehabilitation and timber-salvage projects from the notice, comment, and appeal process used by the Forest Service for more significant land management decisions. 555 U.S. at 490. There, plaintiff's member Jim Bensman attempted to establish injury-in-fact by asserting that Bensman had suffered injury from past development on Forest Service land. *Id.* at 495. However, the court determined that because Bensman's aesthetic harms were not tied to application of the challenged regulations, he did not suffer a cognizable injury-in-fact. *Id.* at 495-96. The court noted that the plaintiff failed "to allege that *any* particular timber sale or other project claimed to be unlawfully subject to the regulations [would] impede a specific and concrete plan of Bensman's to enjoy the National Forests." *Id.* at 495 (emphasis in original). It stated that "the National Forests occupy more than 190 million acres" and as such "without further specification[,] it is impossible to tell *which* projects" would be "unlawfully subject to the regulations." *Id.* (emphasis in original). Because "[a]ccepting an intention to visit the National Forests as adequate to confer standing to challenge any Government action affecting any portion of those forests would be tantamount to eliminating the requirement of concrete, particularized, injury in fact," the court determined that the plaintiff did not have standing on that claim. *Id.* at 496.

Guardians Member George Weurthner's declaration suffers from deficiencies similar to Bensman's in *Summers*. *See* 555 U.S. at 594-96. Mr. Weurthner states that predator control disrupts his enjoyment of trips to Yellowstone, Gallatin, and other Wilderness Areas. However, he fails to specify how WS's programs disrupt his enjoyment of such areas. At its most specific, Weurthner's declaration states that he had seen wildlife traps at the McDonald Pass, which disrupted his enjoyment of his trip there. But Mr. Weurthner presents no evidence about how the 1994/1997 PEIS is

1    implemented in the McDonald Pass or any other areas he has traversed so as to tie his
2    aesthetic injury — viewing fewer predators in the wild — to WS's activities outside of
3    Nevada. Moreover, like the National Forests, there are millions of acres under
4    cooperative agreements for PDM management (*see* dkt. no. 12-1 at 77), only a small
5    portion of which are subject to PDM at any given time, and Mr. Weurthner fails to
6    demonstrate that he has visited such areas. Thus, Mr. Weurthner cannot demonstrate
7    injury-in-fact, for he merely seeks "to vindicate the public's nonconcrete interest in the
8    proper administration of the laws[,]" by having WS supplement the 1994/1997 PEIS.[2]
9    *See Lujan*, 504 U.S. at 580-581 (Kennedy, J., concurring in part and concurring in
10   judgment).

11   These two causes of action must be dismissed as Plaintiff cannot demonstrate
12   injury-in-fact even accepting Plaintiff's allegations as true.

13   **C.    Third and Fourth Claims for Relief**

14   The third claim for relief alleges that WS failed to adequately disclose and analyze
15   environmental impacts in the Nevada EA. (Dkt. no. 1 at 35-36.) In its fourth claim,
16   Plaintiff alleges that WS violated NEPA by failing to prepare an EIS for the Nevada PDM.
17   (Dkt. no. 1 at 37.) Defendant concedes that for the purposes of these claims, Plaintiff's
18   member Don Molde can allege injury in fact.[3] However, Defendant argues that these
19   two claims should be dismissed because Plaintiff cannot demonstrate the alleged injury
20   is redressable. Defendant asserts that even were the Court to order WS to engage in
21   further NEPA analysis, and in turn decide not to implement alternative 5, Plaintiff's

---

[2] Plaintiff also cannot bring a failure-to-supplement challenge to the 1994/1997 PEIS based on member Don Molde's declaration. Mr. Molde's declaration regards Plaintiff's members' activities in Nevada only. While Mr. Molde's declaration satisfies the injury-in-fact requirement for claims two and three, claims one and two concern WS's failure to supplement the PEIS in general, not specifically in relation to the Nevada EA and Decision. Therefore, Mr. Molde cannot demonstrate that he has suffered injury-in-fact for claims one or two.

[3] The injury Mr. Molde will allegedly suffer is viewing fewer coyotes, mountain lions, and ravens in Nevada's wild as a result of WS's Nevada EA and Decision.

injuries would continue to occur because the Nevada Department of Wildlife ("NDOW") would carry out the activities Plaintiff cites as its source of injury.

To prevail, Plaintiff must show that NEPA's procedures threaten a concrete, protected interest. *See Nat. Res. Def. Council v. Salazar*, 686 F.3d 1092, 1098 (9th Cir. 2012). "Plaintiffs alleging procedural injury 'must show only that they have a procedural right that, if exercised, *could* protect their concrete interests.'" *Gutierrez*, 545 F.3d at 1226 (*quoting Defenders of Wildlife v. EPA*, 420 F.3d 946, 957 (9th Cir. 2005) (emphasis in original), *overruled on other grounds by Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644 (2007).

### 1. Defendant's Evidence

Defendant presents an October 28, 2010, letter from Kenneth Mayer, Director of NDOW, stating that NDOW utilizes Defendant's services to control "offending wildlife," but that without WS's participation, NDOW has the authority to, and would in fact, carry out management of wildlife with existing personnel or contract the work to other capable entities. (Dkt. no. 12-1 at 170.)

This case presents similar facts to *Goat Ranchers of Or. v. Williams*, 379 Fed. App'x 662, 663-64 (9th Cir. 2010).[4] There, plaintiffs challenged WS's trapping and killing cougars in Oregon. *Id.* at 663. The court held that because the Oregon Department of Fish and Wildlife would trap and kill cougars absent federal action, plaintiff's injury-in-fact, seeing fewer cougars in the wild, would continue to occur absent federal involvement. *Id.* at 663-64. The court emphasized that "Oregon does not need federal approval to manage the cougars within its borders . . . [w]hether or not the federal government assists Oregon, Oregon will continue to kill and trap cougars." *Id.* at 663; *see also Landwatch Lane Cty. v. US Fish and Wildlife Serv.*, No. 6:12-cv-958, 2012 WL

---

[4] Pursuant to Ninth Circuit Rule 36-3, *Goat Ranchers* is not precedent, but may be cited by this Court. *See also* FRAP 32.1. The Court accordingly cites *Goat Ranchers* not for its precedential value, but because it finds the Ninth Circuit's reasoning on a case with similar facts and law persuasive.

5198457 (D. Or. Oct. 19, 2012) (determining that the plaintiff's claim was not redressable because "the [disputed] pipeline project is not contingent on federal funding, and [the city of] Veneta unequivocally states that it will proceed with the pipeline project with or without federal funding."); *Fund for Animals v. Babbitt*, 2 F. Supp. 2d 570, 575 (D. Vt. 1997) ("Because the state consistently has indicated it will continue the moose hunt, it is mere speculation that a favorable decision by this Court will in any way redress the plaintiffs' alleged injuries.")

Likewise, here, the Mayer letter and evidence in the EA demonstrate that NDOW has its own predator damage management plan for coyotes, mountain lions, and ravens, and would conduct PDM without WS's assistance. (*See* dkt. no. 12-1 at 55.) Such evidence demonstrates that NDOW would implement the same plan absent federal involvement.

### 2. Plaintiff's Rebuttal Evidence

Where, as here, "the existence of one or more of the essential elements of standing depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot . . . predict," it "becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such a manner as to produce causation and permit redressability of injury." *Levine v. Viksack*, 587 F.3d 986, 992 (9th Cir. 2009) (*citing Lujan*, 504 U.S. at 561-62).

Plaintiff does not dispute that NDOW has the authority to carry out the activities proposed in the Nevada EA and Decision. Rather, Plaintiff first argues that at the motion to dismiss stage, their Complaint and supporting declarations allege sufficient facts to demonstrate redressability. (Dkt. no. 21 at 18.) But Plaintiff appears to misunderstand the import of a 12(b)(1) factual attack, which does not take the pleadings at face value, but rather "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *See Myer*, 373 F.3d at 1039.

///

Plaintiff next argues that NDOW's program would kill fewer ravens than WS's program would. Guardians asserts that while WS will use DRC-1339, a certain type of avicide, NDOW cannot use this avicide because it is a special restricted-use pesticide and can only be used under direct supervision by WS employees. However, the Court agrees with Defendant that because NDOW is authorized to manage raven populations by virtue of its Migratory Bird Depredation Permit from the United States Fish and Wildlife Service, NDOW determines the level of take for ravens. The fact that NDOW does not have one particular tool for raven management or that it may not achieve the same level of take as WS does not demonstrate that Plaintiff's injury — observing fewer ravens in Nevada's wilderness — is redressable. Moreover, as WS's program implements PDM at NDOW's behest, it would be pure conjecture to assume that NDOW will not achieve comparable levels of raven management through another avenue should NDOW not receive assistance from the federal program. In fact, the *Goat Ranchers* court implicitly rejected a similar argument. 376 Fed. App'x at 664. The dissenting judge was persuaded that the *rate* at which cougars would be killed was slower under Oregon's Department of Fish and Wildlife than WS's program. *Id.* at 664. Yet the majority went the other way. *Id.* at 663-64. The key there was that Oregon merely used WS for federal assistance in its cougar management program; it had implemented the program without federal assistance in the past and indicated it would do so regardless of federal relief to the plaintiffs there. *Id.* at 663. The same is true here.

Plaintiff next argues that Nevada does not have the financial resources to take over or contract out WS's activities, and points to budget cuts and its $2.7 billion dollar deficit as support. Plaintiff presents Mr. Molde's Internet research regarding WS's and Nevada's respective funding of the pertinent federal programs, as well as research concerning Nevada's budget cuts and deficit. (Dkt. no. 24-1 at 9-10.) Such data is not relevant evidence about whether or not NDOW will conduct its PDM services absent federal participation. Plaintiff asserts that jurisdictional discovery may result in facts supporting Mr. Molde's research, but the Court disagrees. Nevada has the authority to

implement predator damage management, and has indicated it will do so, with or without federal participation.

Finally, Plaintiff states that while NDOW has the authority to control wildlife, whether it in fact takes action is discretionary under NRS § 503.595. Thus, Plaintiff argues that whether or not NDOW would continue to kill large numbers of predators without federal funding is an issue of fact subject to discovery. However, the EA presents evidence that state entities and individuals would continue efforts to reduce or prevent predations absent federal participation. (Dkt. no. 12-1 at 114.) Moreover, NDOW (in the Mayer letter) has undisputedly expressed a clear intent to implement the predator management program absent federal involvement. Finally, because Plaintiff and Defendant have requested lengthy extensions of deadlines in this case (*see* dkt. no. 17), yet Plaintiff has never indicated its intent to seek jurisdictional discovery before this point, Defendant would be unduly prejudiced were the Court to allow Plaintiff to engage in jurisdictional discovery when no disputed issue of fact on this point exists.

For these reasons, Plaintiff's injury cannot be redressed by this Court enjoining WS from implementing the Nevada EA and Decision.

### IV.  MOTION TO DISMISS–WILDERNESS ACT CLAIM

Plaintiff argues that WS's program violates the Wilderness Act, 16 U.S.C. § 1133, because the program will implement aerial gunning and aircraft landing in Nevada Wilderness Areas to manage carnivores for the benefit of other species such as sage grouse and deer. According to Plaintiff, such management procedures violate 16 U.S.C. § 1133(c):

> Except as specifically provided for in this chapter, . . . and, except as necessary to meet minimum requirements for the administration of the area for the purpose of this chapter . . . there shall be no temporary road, no use of motor vehicles, motorized equipment or motorboats, no landing of aircraft, no other form of mechanical transport . . . within any such area.

#### A.   Legal Standard

Defendant moves to dismiss Plaintiff's Wilderness Act claim under Fed. R. Civ. P. 12(b)(6).

On a 12(b)(6) motion, the court must determine "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1054 (9th Cir.2011) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

When determining the sufficiency of a claim, "[w]e accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party[; however, this tenet does not apply to] . . . legal conclusions . . . cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation and internal quotation marks omitted). "Therefore, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Id.* (citation and internal quotation marks omitted); *see also Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 555) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").

**B.    Analysis**

Plaintiff argues that the Wilderness Act specifically prohibits aerial hunting in WAs. Defendant does not dispute this point. Rather, WS argues that where it intends to utilize aerial hunting techniques, its activities are undertaken in concert with the US Forest Service ("USFS") and Bureau of Land Management ("BLM") pursuant to a national Memorandum of Understanding to ensure that WS complies with all applicable laws governing National Forest and BLM lands. Therefore, WS asserts, to the extent Plaintiff wishes to challenge aerial hunting procedures, the proper entities to sue are the BLM and USFS. Defendant points to no caselaw to support its argument on this point, and therefore cannot demonstrate as a matter of law that Plaintiff has no viable cause of action against WS for its aerial hunting procedures on Wilderness Areas. Rather, Defendant points to information in the EA demonstrating that WS conducts its activities

in Wilderness Areas in accordance with the BLM's and USFS's activities. But unlike with a 12(b)(1) factual attack, on a 12(b)(6) motion, the Court takes Plaintiff's allegations as true, and Defendant must demonstrate that Plaintiff's Complaint contains conclusory allegations or states a claim for which there is no legal relief. *Accord Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) ("As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion.") (citation and internal quotation marks omitted)). While the Court may take judicial notice of certain facts, *see* Fed. R. Evid. 201, even were the Court to consider the information contained in the EA, it is not apparent from this information that Plaintiff has no ability to challenge WS for carrying out actions contrary to law merely because WS does so in conjunction with other agencies, or at the direction of those agencies.

Because Defendant has not demonstrated that Plaintiff cannot state a claim against it for violation of the Wilderness Act, the Court denies Defendant's Motion to Dismiss Plaintiff's fifth cause of action.

## V.    MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY

Plaintiff filed a separate Motion for Leave to Conduct Jurisdictional Discovery, requesting permission to conduct such discovery for reasons articulated in its Response to Defendant's Motion to Dismiss, and addressed by this Court in Section III(C). For reasons stated above, the Motion is denied.

## VI.    CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motions.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss (dkt. no. 12) is GRANTED IN PART AND DENIED IN PART as follows:

- Claims 1-4 are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction;

- Claim 5 remains viable.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to Conduct Jurisdictional Discovery (dkt. no. 27) is DENIED.

DATED THIS 14th day of March, 2013.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE